UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:19-CV-00064-JHM

PURE MARKETING, LLC                                                                    PLAINTIFF

V.

GOT MATCHA PREMIUM TEA CO., LLC                                          DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant's Motion to Dismiss. [DN 16]. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendant's motion is **GRANTED**.

**I. BACKGROUND**

According to the Amended Complaint, Pure Marketing, LLC ("Pure") is the owner of a 30% interest in Matcha Premium Tea Co., LLC ("Matcha"). [DN 14 ¶ 7]. Matcha develops and manufactures organic matcha and matcha-related products and sells those products through distributors and over the internet. [*Id.* ¶ 5]. Pure alleges that Matcha "expended and committed assets of Matcha for the benefit of a joint venture or other business arrangement . . . and excluded Pure from such joint venture." [*Id.* ¶ 9]. As a result, Pure maintains that "[a]ny proceeds or profits from the joint venture will be denied to Matcha, notwithstanding Matcha's contribution" by virtue of its interest in Matcha. [*Id.* ¶ 10]. In the alternative, should the joint venture fail, Pure alleges it will lose the benefit of the assets it committed to Matcha to become a shareholder. [*Id.* ¶ 11]. These allegations form the basis of Pure's first cause of action—breach of contract. [*Id.* ¶¶ 15–18]. Pure next alleges that Matcha "has withheld relevant information and concealed from Pure negotiations between Matcha and the third party"—specifically, Pure complains that

"Matcha has withheld information from Pure regarding, without limitation its operations, financial condition, management, employment agreements, related party agreements and third party negotiations." [*Id.* ¶¶ 12–13]. That allegation forms the basis of Pure's second cause of action—a request for an accounting of and access to all books and records of Matcha. [*Id.* ¶¶ 19–20].

Matcha previously filed a motion to dismiss citing the same bases for dismissal as it does here. [DN 8]. Pure opposed that Motion but also requested leave to amend its Complaint. [DN 11 at 8]. The Court granted Pure fourteen days during which it was entitled to amend its Complaint. [DN 15]. Pure filed an amended complaint during the allowed timeframe. [DN 14]. The instant Motion is Matcha's refiled Motion to Dismiss relating to Pure's Amended Complaint. [DN 16]. Matcha maintains three independent grounds for dismissal: (1) the allegations, even taken as true, fail to state a claim for either cause of action asserted; (2) the asserted claims are subject to mandatory arbitration under the Operating Agreement; and (3) improper venue. [DN 17 at 1–2]. Pure responded and Matcha replied. [DN 18; DN 19]. Additionally, Pure filed a Motion for leave to supplement its response. [DN 20]. That Motion is **GRANTED** and the supplemental response was considered in ruling on the Motion to Dismiss.

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint . . . states a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. Instead, "a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 663 (quoting Fed. R. Civ. P. 8(a)(2)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

If "matters outside the pleadings are presented to and not excluded by the court" when ruling upon a motion under Rule 12(b)(6), the Federal Rules require that "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). This Rule does not require the Court to convert a motion to dismiss into a motion for summary judgment every time the Court reviews documents that are not attached to the complaint. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). "[W]hen a document is referred to in the complaint and is central to the plaintiff's claim . . . [,] the defendant may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id.* (quotation omitted).

### III. DISCUSSION

**A. Consideration of Matters Outside the Pleadings**

3

First, the Court must determine, as outlined above, whether to construe the Motion by Matcha as one to dismiss or one for summary judgment. The pleadings in this case do not shed much light on the grounds that would support Matcha's motion. Instead, the grounds for granting Matcha's motion are set out in a document attached to the Motion itself. The document—Matcha's Operating Agreement—is not referred to in Pure's Complaint, and for the Court to consider it, the Motion must be converted into one for summary judgment pursuant to Fed. R. Civ. P. 12(d).

Rule 12(d) advises that, when converting a motion to dismiss into one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." "Where one party is likely to be surprised by the proceedings, notice is required" to that party that the Court is converting the motion into one for summary judgment. *Bruce v. Corr. Med. Servs., Inc.*, 389 F. App'x 462, 465 (6th Cir. 2010).

After considering this standard, the Court converts Matcha's Motion into one for summary judgment. Both parties have cited to matters outside the pleadings and attached documents to their filings on the Motion, demonstrating that both not only were on notice that the Court may refer to them but that they expected as much. Because both parties attached and relied upon documents not contained in the pleadings and had an opportunity to respond to the documents submitted by the opposing party, the Court finds it appropriate to convert Matcha's Motion into a motion for summary judgment.

### B. Motion for Summary Judgment

Pure asserts two causes of action—"breach of contract" and "accounting"—arising from the Purchase Agreement executed between itself and Matcha on May 31, 2017. [DN 14]. Pure attaches said agreement to its Amended Complaint. [DN 14-1]. Specifically, Pure maintains

that Matcha breached the Purchase Agreement by denying Pure all rights to which it is entitled as a member of Matcha, including "its proportionate share of all distributions and payments, including, but not limited to, those payments for the benefit of the joint venture." [DN 14 ¶ 17]. Further, Pure argues that Matcha incorrectly denied Pure the right to an accounting of and access to all books and records of Matcha. [*Id.* ¶ 20]. Matcha moves to dismiss arguing that even when taken as true, Pure's allegations fail to state any viable claim. [DN 16; DN 17]. Matcha premises this assertion on the argument that the Purchase Agreement was never breached. Instead, Matcha maintains that any such claims by Pure must arise out of the Operating Agreement, attached as an exhibit to Matcha's memorandum in support of its Motion. [DN 17-1].

Matcha vehemently maintains that neither of Pure's causes of action allege that Matcha failed to perform under the Purchase Agreement—the agreement whereby Matcha sold and Pure bought a 30% membership interest in the LLC. [DN 17 at 3]. Pure, in turn, points to a single paragraph of the Purchase Agreement which states:

> Upon payment of the purchase price to Got Matcha, Pure Marketing shall hold and be entitled to exercise all permitted legal rights and privileges vested in members of the limited liability company, including but not limited to voting privileges and rights, right to appropriate and lawful distributions of company income, rights to inspect company organizational, operational, and financial records, and all other rights granted to members of limited liability companies by applicable Delaware statute or other rule of law.

[DN 14-1 at 1]. Indeed, looking at this provision in isolation may be enough to convince the Court that Pure asserts plausible causes of action. However, it is necessary for the Court to examine the broader agreement. Further, Matcha directs the Court's attention to the LLC's Operating Agreement which went into effect in May 2013. [DN 17 at 4; DN 17-1]. Matcha states that "[t]he rights and obligations of interest-holders in [Matcha] are governed by the Operating Agreement for the LLC." [DN 17 at 4]. That being the case, Matcha concludes its

argument by stating that any claim Pure asserts must arise under the terms of the Operating Agreement. [*Id.*]. Pure retorts that it is not alleging Matcha breached the Operating Agreement because Pure never signed the Operating Agreement. [DN 18 at 10].

The issues raised in the parties' briefs are governed by the principles of contract interpretation. The proper interpretation of a contract is a question of law for the Court to decide. *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992); *see also AT&T Corp. v. Lillis*, 953 A.2d 241, 251–52 (Del. 2008). "In construing a contract, a court's primary objective is to ascertain and to effectuate the intention of the parties to the contract from the contract itself." *Logan Fabricom, Inc. v. AOP P'ship LLP*, 2006 WL 3759412, *2 (Ky. Ct. App. Dec. 22, 2006); *see also Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). From the four corners of the Purchase Agreement, it is evident that the parties intended to exchange promises in order that Pure would become a member of the LLC, maintaining a 30% membership interest, and that Matcha would receive the $80,000 purchase price from Pure. The Purchase Agreement does not detail the rights and obligations of each party once membership is achieved nor does it anticipate that either party would sue for breach of contract due to an inability to exercise said rights. Instead, as correctly noted in Matcha's brief, the only substantive obligation on the parties under the Purchase Agreement is for Matcha to grant Pure a 30% membership interest in the LLC in exchange for $80,000. [DN 19 at 2]. Because there is no allegation that this agreement was violated, and, in fact, Pure acknowledges as much in its Amended Complaint [DN 14 ¶ 7], Pure's claims cannot arise under the Purchase Agreement.

As mentioned above, Pure maintains that the Operating Agreement is inapplicable because Pure never signed it. Matcha challenges this assertion and argues that Pure is bound by

6

the Operating Agreement, regardless of whether Pure signed it. Indeed, under both Kentucky law—which controls the Purchase Agreement—and Delaware law—which controls the Operating Agreement—any member of the LLC, original or subsequently admitted, is bound by the terms of an operating agreement regardless of whether the party signed said agreement. KRS § 275.275(3) ("Upon becoming a member in a limited liability company, the member is bound by and a party to the operating agreement."); Del. Code Ann. tit. 6, § 18-101(9) ("A member . . . of a limited liability company . . . is bound by the limited liability company agreement whether or not the member . . . executes the limited liability company agreement."). This being the case, when the substantive objective of the Purchase Agreement was achieved and Pure took a 30% membership interest in Matcha, that interest was subject to the rights, privileges, and obligations applicable to all members of Matcha as exclusively outlined in the Operating Agreement. The Operating Agreement further clarifies by the inclusion of an "Entire Agreement" provision. That provision states that the Operating agreement "constitutes the entire agreement among the parties hereto and contains all of the agreements among said parties with respect to the subject matter hereof. This Operating Agreement supersedes any and all other agreements, either oral or written, between said parties with respect to the subject matter hereof." [DN 17-1 at 13]. Therefore, Pure's claims for breach of contract and accounting pertain to rights granted and controlled by the Operating Agreement.

The Court passes no judgment on the merits of Pure's claims but acknowledges that these claims arise out of the Operating Agreement rather than the Purchase Agreement. It may well be the case that Pure attempted to artfully word its Complaint so as to avoid the application of the jurisdictional and mandatory arbitration provisions of the Operating Agreement. [*Id.* at 14]. However, the Court cannot ignore the clear import of the Operating Agreement as it relates to

7

Pure's claims. Because there is no genuine dispute as to whether the Purchase Agreement was violated, summary judgment is appropriate. Accordingly, Matcha's Motion is **GRANTED**.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [DN 16] is converted to a motion for summary judgment and said Motion is **GRANTED**.

Joseph H. McKinley Jr., Senior Judge
United States District Court

January 15, 2020

cc: counsel of record